UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **AXA Equitable Life Insurance Company; and MONY Life Insurance Company,** | Civil No. 06-341 (DSD / SRN) |
| Plaintiffs, | |
| v. | REPORT & RECOMMENDATION |
| **John R. Paulson; John Paulson Insurance Group, LLC; David R. Dahl; Coventry First, LLC; Mills, Potoczak and Company, as Trustee of Life Settlements 2005 Trust No. 3; Wells Fargo Bank Northwest, N.A., as Custodian under Custodian Agreement, dated as of September 20, 2006; and Alternative Asset Opportunities PCC Limited,** | |
| Defendants. | |

---

Terrance J. Wagener & John Harper III, Krass Monroe, P.A., 8000 Norman Center Drive, Suite 1000, Minneapolis, MN 55437-1178, for Plaintiffs.

Rikke Dierssen-Morice & Erik J. Girvan, Faegre & Benson LLP, 2200 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN, 55402-3901, for Defendant Alternative Asset Opportunities.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

This matter comes before the undersigned United States Magistrate Judge on Defendant Alternative Asset Opportunities' Motion To Dismiss (Doc. No. 42). The matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1(a). For the reasons stated below, the Court recommends that the motion be granted and this action be dismissed without prejudice.

**I.      FACTUAL AND PROCEDURAL HISTORY**

Plaintiffs AXA Equitable Life Insurance Company ("AXA") and MONY Life Insurance

Company of America ("MONY") filed this action against Defendants John R. Paulson and Alternative Asset Opportunities PCC Limited ("Asset Opportunities"), among others, generally alleging that life insurance policies AXA and MONY issued to Paulson and his son-in-law naming Paulson as the insured should be rescinded and declared void due to Paulson having made material misrepresentations to Plaintiffs on the insurance applications. (Doc. No. 37 (Third Amended Complaint) ¶¶ 29-54.) They also seek damages. (Id.)[1]

After AXA issued one of the policies to Paulson ("the 786 policy"), Paulson sold it to Asset Opportunities, but not directly. Rather, Asset Opportunities acquired it as follows. Its "investment manager, Surrenda-link Limited" ("Surrenda-link") arranged the purchase. (Doc. No. 52 (Declaration of Charles Tracy) ¶ 7.) "Surrenda-link is a registered company in England and Wales and is located in Chester, United Kingdom" and has no offices or personnel in the United States, "is not registered to do business in the" U.S. and "has no authorized agent for service in the" U.S. (Id., ¶ 8.) Surrenda-link "maintains contacts" with entities such as A&M Analysis Group, LLC ("A&M"), informing such entities "of the types of policies required by Surrenda-link's clients and requesting that A&M submit any such policies to Surrenda-link for assessment." (Doc. No. 65 (Affidavit of Erik J. Girvan, Ex. A), at 5.)

Asset Opportunities purchased the 786 policy from A&M, a company located in North Carolina. (Tracy Decl. ¶ 9.) A&M in turn had acquired the policy from Mr. Paulson. In

---

[1] The remaining defendants as well as Plaintiff MONY are not relevant to the present motion by Asset Opportunities. In addition to the AXA policy at issue here, the underlying action also concerns a policy issued by MONY that was similarly transferred to another of the defendants and MONY alleges that Mr. Paulson made misrepresentations similar to those alleged by AXA. (Doc. No. 37 (Third Amended Complaint) ¶¶ 7-18.) Likewise, AXA issued another policy naming Mr. Paulson as insured and his son-in-law as owner, but that policy has been transferred to defendant Wells Fargo Bank and thus also is not relevant to the present motion. (Id. ¶ 19.)

November 2005, a financial representative of Mr. Paulson contacted A&M and "requested that A&M solicit offers for the 786 policy." (Doc. No. 65 (Affidavit of Erik J. Girvan, Ex. A), at 4.) "A&M contacted Surrenda-link that same day to request a bid." (Id.) "Surrenda-link began conducting due diligence on the policy, including collecting information, to determine whether it met the appropriate criteria to be added to Asset Opportunities's investment portfolio." (Id.) "At A&M"s request, Surrenda-link participated in one conversation with Paulson's representative." (Id.) After obtaining Mr. Paulson's signature on the appropriate documents, "A&M forwarded the document set to Surrenda-link for continued due diligence," following which "A&M closed the purchase of the policy from" Mr. Paulson and "then A&M resold the policy to Asset Opportunities by way of a Purchase Agreement, dated March 29, 2006." (Id.)

Defendant Asset Opportunities now moves to dismiss the action, arguing that AXA's claims against Asset Opportunities must be dismissed because while AXA would be a necessary party to any action to rescind the policy it owns, this Court lacks personal jurisdiction over it, thereby rendering it an indispensable party.

**II.   DISCUSSION**

    **A.   This Court Lacks Personal Jurisdiction Over Asset Opportunities**

Asset Opportunities claims this Court lacks jurisdiction over it because it, a non-resident entity, has no contacts with Minnesota. Asset Opportunities insists it "is a foreign company with no offices, employees, or agents for service in the United States" and thus "has no connection to Minnesota." (Mem. at 1-2; accord id. at 2 (claiming it "does not have any offices, or employees in the United States, is not registered to do business in the United States, and has no authorized agent for service in the United States").) Rather, it is registered and has its principal place of business in Guernsey, Channel Islands, United Kingdom. (Id.)

3

Nevertheless, Plaintiffs claim jurisdiction is proper because Asset Opportunities "through its agents, transacted business with a Minnesota resident by purchasing an insurance policy originating in Minnesota." (Mem. at 1-2.) Plaintiffs seem to acknowledge that Asset Opportunities has "no direct contacts with Minnesota," relying instead on the argument that jurisdiction is valid based on "the acts of its agents":

> [Asset Opportunities] concedes that Surrenda-Link . . . acted on its behalf, and in concert with A& M Analysis Group . . . in contracting with Defendant Paulson, a Minnesota resident, to purchase the 786 policy. . . . Simultaneously, A&M and Surrenda-Link arranged for re-sale of the 786 policy to AAO. In acting as AAO's agent, Surrenda-Link had direct contact with Paulson's representative in Minnesota, as well as incidental contacts with Minnesota as part of its investigation and due diligence of Paulson and the 786 policy.

(Id. at 3-4.) They thus claim that "Surrenda-Link and A&M's contacts with Minnesota are imputable to [Asset Opportunities]" so as to support jurisdiction over it. (Id. at 4 (arguing that "Surrenda-Link and A&M represented [Asset Opportunities] in the procurement of the 786 policy").)

### 1. Exercising Personal Jurisdiction Requires That The Defendant Has "Purposely Availed" Itself Of Doing Business In The Forum

Because Minnesota has construed its long-arm statute to extend to the full reach of the Due Process Clause, the issue of whether this Court would have personal jurisdiction over Asset Opportunities becomes simply whether the exercise of such jurisdiction would comport with "'traditional notions of fair play and substantial justice.'" Juelich v. Yamazaki Mazak Optonics Corp., 682 N.W.2d 565, 570 (Minn. 2004) (internal citation omitted).[2] "[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the

---

[2] Because this action is premised on diversity jurisdiction, this Court applies the personal jurisdiction law of the forum state, Minnesota. Romak USA, Inc. v. Rich, 384 F.3d 979, 984 (8th Cir. 2004).

4

forum State." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985). Generally, a court may exercise jurisdiction over a non-resident defendant that has "purposely availed itself of doing business" in Minnesota such that the exercise of jurisdiction by a Minnesota court over Defendant would not violate due process. Id. at 472-75 (discussing requirement that defendant "'purposefully directed' his activities at residents of the forum"). Defendant's "'conduct and connection with the forum State [must be] such that it should reasonably anticipate being haled into court there.'" Id. at 474 (internal citation omitted). But jurisdiction is not proper where the defendant's contacts with the forum state are only "'random,' 'fortuitous' or 'attenuated.'" See id. at 475.

### 2. Personal Jurisdiction Can Not Be Premised On A Non-Resident Defendant Having Simply Contracted With A Forum Resident

There appears to be no assertion of, much less factual support for, the theory of general jurisdiction, which requires "continuous and systematic general business contacts." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 & n.9 (1984); see Burger King Corp., 471 U.S. at 472-73 & n.15 (explaining that general jurisdiction permits a forum to exercise "personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum"). Thus, the question becomes solely one of specific jurisdiction. A court may exercise specific jurisdiction as long as the claim arises out of or relates to that contact. Burger King Corp., 471 U.S. at 472-73 & n.15 (stating that specific jurisdiction requires that "the litigation results from alleged injuries that 'arise out of or relate to' those activities").

Here, even if one were to view the transaction simply as Asset Opportunities having entered a contract directly with Paulson, a Minnesota resident, this alone is clearly not enough to support jurisdiction. Iowa Elec. Light & Power Co. v. Atlas Corp., 603 F.2d 1301, 1303 (8th Cir. 1979) ("Merely entering into a contract with a forum resident does not provide the requisite

5

contacts between a defendant and the forum state."). In any event, the transaction was hardly that simple as Asset Opportunities contracted with Surrenda-link to locate and evaluate such policies for purchase and Surrenda-link dealt largely, if not exclusively, with A&M Analysis.

### 3. Even If Asset Opportunities Was Conducting Business Through An Agent, The Agent's Contacts Do Not Support Jurisdiction Here

The assessment of a defendant's contacts is usually confined to those of the defendant itself. See Epps v. Stewart Information Servs. Corp., 327 F.3d 642, 649-50 (8th Cir. 2003) (noting that contacts of subsidiary are generally not attributable to corporate parent defendant). Granted, a court may consider the contacts of the defendant's agent. Romak USA, Inc. v. Rich, 384 F.3d 979, 985 (8th Cir. 2004). But the party asserting jurisdiction based on the acts of a defendant's agent bears the burden of establishing the fact of the agency relationship and the scope of that agent's authority. See id. (applying Missouri state law of agency); White v. Boucher, 322 N.W.2d 560, 566 (Minn. 1982) ("Whether the relationship exists is a question of fact, and the party alleging the existence of the agency has the burden of proof.").

Here, the resulting purchase contract between Asset Opportunities and A&M Analysis appears to be an arms-length transaction between those two entities, not anything that could be deemed to constitute or reflect an agency relationship between them. (Doc. No. 65 (Affidavit of Erik J. Girvan), Ex. A (Answers' To Jurisdictional Discovery), at pp. 5-6 (stating, in response to Interrogatory No. 2, that there was no discussion, agreement and / or arrangement granting A&M "authority, permission, or agency to act on behalf of" Asset Opportunities).) Asset Opportunities also asserted that there were no "communications or documents pertaining to employment, independent contractor, grants of authority, representative capacity, or agency relationship, agreements, or arrangements, express or implied between" Asset Opportunities and A&M. (Id. at p. 6 (Response to Interrogatory No. 3).)

6

Granted, there appears to be at least a plausible argument that Surrenda-link might have acted as Asset Opportunities' agent in this transaction. (Doc. No. 65 (Girvan Aff.), Ex. B (Management Agreement between Asset Opportunities and Surrenda-link).)[3] But even assuming as much, Surrenda-link dealt mostly with A&M Analysis, a North Carolina company.

Surrenda-link's contacts with Mr. Paulson, the only party who is a citizen of Minnesota, are remote and tenuous at best. After Mr. Paulson's financial representative contacted A&M requesting that it solicit offers for the 786 policy, "A&M contacted Surrenda-link . . . to request a bid." (Doc. No. 65 (Girvan Aff.), Ex. A, Response To Interrogatory No. 1, at 4.) In conducting its due diligence investigation, "[a]t A&M's request, Surrenda-link participated in one conversation with Paulson's representative." (Id.) The transaction was completed after documents were sent to Mr. Paulson and returned, but even this was conducted through A&M. (Id.)

Moreover, a single conversation–even assuming that Asset Opportunities' agent initiated the call to one it knew was a Minnesota resident–can not support jurisdiction. Digi-tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd., 89 F.3d 519, 523 (8th Cir. 1996) (rejecting jurisdiction even though non-resident corporation "sent numerous letters and faxes and made several telephone call to Minnesota"). Thus, even if this single conversation could be viewed as a contact of Defendant with the forum, it is too remote and attenuated to support jurisdiction.

---

[3] Under an Investment Management Agreement, Asset Opportunities appointed Surrenda-link to act as its investment manager, but Surrenda-link's services were not exclusive to Asset Opportunities and the agreement provided that nothing in it "shall constitute either party a partner of the other, nor shall the execution, completion and implementation of this Agreement confer on any party any power to bind or impose any obligations to any third parties on the other party or to pledge the credit of the other party, except as specified herein." (Id., Ex. B ¶¶ 3.1, 9, & 17.) Asset Opportunities thus denies that Surrenda-link (much less A&M) was its agent. (Reply Mem. at 1, 2, 4-5.)

In sum, to the extent this web of transactions could be viewed as Asset Opportunities' contacts–under the governing requirement that the evidence be viewed in the light most favorable to Plaintiffs and that they need only make a prima facie showing of jurisdiction–such contacts are too "'random,' 'fortuitous' or 'attenuated'" to support personal jurisdiction over Asset Opportunities here in Minnesota.  Plaintiffs' remaining arguments–for example that Minnesota has the strongest interest in providing a forum where other forums are not convenient (Mem. at 5)–cannot overcome the lack of contacts with the forum.  Asset Opportunities simply did not purposely avail itself of doing business in Minnesota.

### 4. In Any Event, Plaintiffs' Claims Do Not Arise From Asset Opportunities' Contacts Here

Finally, the underlying claims do not arise out of whatever "contacts" Asset Opportunities had with the forum.  At bottom, the present action was originally filed in January 2006 by Plaintiffs, the insurance companies that issued the policies at issue, against Mr. Paulson alone, alleging that he misrepresented relevant facts to them.  (Doc. No. 1 (Complaint).)  Although Plaintiffs subsequently amended their Complaint several times, first to add John Paulson Insurance Group, LLC and David R. Dahl (Mr. Paulson's son-in-law and the owner of one of the other policies) as defendants (Doc. No. 7 (Amended Complaint)), and later to add additional defendants that acquired the policies at issue (Doc. No. 28 (Second Amended Complaint)), the five claims and the particular requests for relief remained essentially the same and there still is no allegation of wrongdoing against Asset Opportunities.  In fact, Asset Opportunities did not acquire the policy until March 29, 1996, several months after Plaintiffs filed the original Complaint, the claims of which were retained substantially unchanged in the amended complaints.

Rather, it appears that Asset Opportunities is a defendant solely because it is the current

owner of the policy, and Plaintiffs seek to rescind the policies and/or have them declared void. Thus, although Asset Opportunities clearly has an interest in the outcome of this action, its contacts with the forum (assuming that they amount to such for jurisdictional purposes), are limited to its acquisition of the policy, which is separate from the antecedent wrongdoing that Plaintiffs allege against Mr. Paulson. Insofar as the wrongdoing that could support such jurisdiction is allegedly confined to Mr. Paulson, the Court questions whether specific jurisdiction could apply to Asset Opportunities on these facts. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 & n.15 (1985) (explaining that specific jurisdiction requires that "the litigation results from alleged injuries that 'arise out of or relate to' those activities").[4] Accordingly, the Court finds that Asset Opportunities lacks the necessary contacts with the forum so as to support the exercise of personal jurisdiction over it.

**B.     Under Rule 19(b), Asset Opportunities Is An Indispensable Party**

Because Asset Opportunities should thus be dismissed from this action, the question becomes whether its absence would require the entire action to be dismissed under Rule 19, Asset Opportunities being an indispensable party.[5]

---

[4] It appears that the Supreme Court has never returned directly to the issue broached in 1984 regarding what precisely constitutes a "suit arising out of or related to the defendant's contacts with the forum." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984). The Court expressly deferred ruling on "what sort of tie between a cause of action and a defendant's contacts with a forum is necessary to a determination that either connection[–that is, "arising out of" and "related to"–]exists." Id. at 416 (and also expressly deferring any ruling on potential issue of any distinction between "arising out of" and "related to"). Nevertheless, it seems clear that some connection is required between the injury underlying the plaintiff's claims and the alleged wrongdoer's contacts with the forum. No such connection appears here between Plaintiff's claims for rescission–based on Mr. Paulson's alleged misrepresentations–and Asset Opportunities' later acquisition of the resulting policy.

[5] This Court, having ruled that it lacks jurisdiction over Asset Opportunities, notes that it continues to possess the authority to address Asset Opportunities' ultimate request for relief. The Court clearly possesses subject matter jurisdiction and none of the other defendants have

1.   **Rule 19(b) Requires A Pragmatic Analysis of Several Factors And Interests**

Under Rule 19, a person should be joined as a party in certain circumstances as long as the person "is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action." Fed. R. Civ. P. 19(a). But if such a person "cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it or should be dismissed, the absent person being thus regarded as indispensable." Fed. R. Civ. P. 19(b).

"[W]hether a particular lawsuit must be dismissed in the absence of [an unjoined] person, can only be determined in the context of particular litigation." Provident Tradesmen Bank & Trust Co. v. Patterson, 390 U.S. 102, 118 (1968) (clarifying that courts must undertake a "practical examination of the circumstances" of each case). "The decision whether to dismiss (i.e., the decision whether the person missing is 'indispensable') must be based on factors varying with the different cases." Id. at 118-19. A court's task is not to determine whether a party is indispensable but rather to determine whether it could not proceed without that party:

> To say that a court 'must' dismiss in the absence of an indispensable party and that it 'cannot proceed' without him puts the matter the wrong way around: a court does not know whether a particular person is 'indispensable' until it has

---

questioned this Court's personal jurisdiction over them. Thus there remains a valid action before this Court and Rule 19(b) compels this court to then determine whether it should proceed with the remaining parties or dismiss the entire action for the absence of what would then be an indispensable party. Fed. R. Civ. P. 19(b) (stating that if a person "cannot be made a party, the court shall determine whether . . . the action . . . should be dismissed"). Cf. Lamar v. American Basketball Assoc., 468 F. Supp. 1198 (S.D.N.Y. 1979) (proceeding to issue of whether to dismiss action by basketball player–who initially sued ABA and his team for breach of contract and in which owner of another ABA team with whom the plaintiff also had contracted to play was later joined, following which claims against the two original defendants were dismissed, leaving only the later-added team owner as the sole defendant–after concluding that personal jurisdiction over the second team owner and proper venue were lacking, such that "the action cannot be maintained in this Court").

10

examined the situation to determine whether it can proceed without him.

Id. at 119.

Rule 19(b) enumerates four overlapping non-exclusive factors to guide such a determination:

> first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measure, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Id. As the Eighth Circuit has noted, the Supreme Court has identified several interests in this rule:

> Rule 19(b) suggests four "interests" that must be examined in each case to determine whether, in equity and good conscience, the court should proceed without a party whose absence from the litigation is compelled. . . . First, the plaintiff has an interest in having a forum. . . . Second, the defendant may properly wish to avoid multiple litigation or inconsistent relief, or sole responsibility for a liability he shares with another. . . . Third, there is the interest of the outsider whom it would have been desirable to join. Fourth, there remains the interest of the courts and the public in complete, consistent and efficient settlement of controversies.

Nichols v. Rysavy, 809 F.2d 1317, 1332 (8th Cir. 1987) (quoting Provident Tradesmens Bank & Trust Co., 390 U.S. at 109-11).

### 2. Based On The Relevant Factors and Interests Of Rule 19(b), Asset Opportunities Is An Indispensable Party

Here, with respect to what the Supreme Court has identified as the second and third interests–Mr. Paulson's desire "to avoid multiple litigation or inconsistent relief, or sole responsibility for a liability he shares with another" and the interests of Asset Opportunities–the

11

insurers that issued the policies seek to rescind those policies and have them declared void.[6] But one of those policies has been assigned to Asset Opportunities, a non-resident over which this Court has determined it lacks personal jurisdiction. Because Asset Opportunities is now the owner of the policies at issue, it would seem to have a vital interest in the present action seeking to rescind and declare void those policies. If its policy were declared void in its absence, it would likely bring suit against AXA and Mr. Paulson, thereby negating the interest in avoiding multiple litigation.[7]

For largely the same reasons, the Court notes that much of Plaintiffs' argument is contrary to what the Supreme Court has identified as the fourth interest, that is, the interest in "consistent and efficient settlement of controversies." Plaintiffs claim that AXA and Paulson can obtain "complete relief" through the remedy of rescission. (Mem. at 8.) They claim such relief "is not inconsistent simply because it created the possibility of future litigation between Paulson and those claiming an interest in the rescinded 786 policy," as Asset Opportunities' "right to recovery is not affected by adjudication of the issues between [Plaintiff] and Paulson in the present action." (Mem. at 9; accord id. at 11 (noting that "[s]ubsequent litigation for damages or contribution and indemnification may ensue between Paulson, [Asset Opportunities],

---

[6] These "interests" substantially overlap with "factors" one and three of the Rule 19(b) analysis–to what extent a judgment rendered in Asset Opportunities absence might prejudice it and whether a judgment rendered in its absence will be adequate.

[7] With respect to factor two, the parties have not suggested any way, short of dismissal, to specially tailor the proceedings so as to reduce the prejudice resulting from proceeding without Asset Opportunities and the Court is aware of none. Cf. Employers Ins. of Wausau v. Jostens, Inc., 181 F.R.D. 623, 628 (D. Minn. 1998). Plaintiffs' reliance on Wood & Locker, Inc. v. Doran and Assocs., 708 F. Supp. 684 (W.D. Pa. 1989), is questionable in light of the fact that it ruled that the absent party was not "necessary" under Rule 19(a), where it was only one of many parties that the plaintiff had contracted with and the court concluded that the other contracting parties, which had been made defendants, "will likely represent [the absent party's] interest by opposing rescission." Id. at 690.

A&M and Surrenda-Link, but this will result in new obligations to entities separate and distinct from AXA").)

But Plaintiffs' attempt to delineate a manageable boundary between the dispute between AXA and Paulson on the one hand and the repercussions for Asset Opportunities on the other simply ignores the fact that granting rescission without the present owner of the policy would terminate what Plaintiffs themselves acknowledge as Asset Opportunities' "undisputed" "interest in the 786 policy." (Mem. at 9.) Such an outcome would almost surely entail further litigation by that owner against many of the same persons that are parties here.

Moreover, there is no satisfactory assurance that Paulson would litigate the present action without Asset Opportunities in a manner that would protect Asset Opportunities' interests. Plaintiffs seek to rescind the policy or have it declared void due to Paulson's alleged misrepresentations.[8] But now that Paulson has sold the policy, relief in the form of rescission or a declaration that it is void would not necessarily be an unattractive resolution of this action from Paulson's perspective compared to a judgment for damages. In contrast, Asset Opportunities, as the present owner of the policy, presumably has no interest in rescission or in having the policy voided and would prefer to have Paulson pay damages.[9]

---

[8] Although Plaintiffs also seek damages, it appears that rescission is the main remedy they seek. (Mem. at 15 ("A determination that Plaintiffs cannot obtain the remedy of rescission is extremely prejudicial to AXA.").)

[9] Gwartz v. Jefferson Mem. Hops. Assoc., 23 F.3d 1426 (8th Cir. 1994), is thus distinguishable. In Gwartz, the issue was whether the medical services corporation of the individual physician plaintiff was a necessary party to his action against the hospital that employed him. Because the individual physician could not recover damages suffered by his corporation, the corporation was not a necessary party under Rule 19(a)(1). Id. at 1429. Nor was it necessary under Rule 19(a)(2) because "[d]isposition of [his] claims in the absence of [his corporation] will not as a practical matter impair or impede [his corporation's] ability to protect its interest because [he] has the same interest in establishing the facts that [his corporation] does." Id. Here, in contrast, the interests of Paulson and Asset Opportunities are not so aligned.

Finally, with respect to the first interest identified by the Supreme Court (which is essentially consistent with the fourth factor under Rule 19(b)), that of the Plaintiff in having a forum in which to resolve the dispute, it has not been definitively established here that it would be impossible to locate a venue where Asset Opportunities could be subject to personal jurisdiction so as to permit it to be a party to any action to rescind or declare void the policy it now owns. Although Plaintiffs contend that dismissal would leave them "in the unenviable position of pursuing its claims in a foreign jurisdiction with no connection to the fraudulent application, the policy issued, or the original policyholder from whom AXA seeks relief" (Mem. at 15-16), the present action is transitory as it neither concerns any real property in Minnesota nor otherwise requires a Minnesota venue. Thus, there is no basis to conclude that this action, by its very nature, must–or even should–be litigated in Minnesota.

      **3.     Parties To A Contract Are Usually Indispensable In Actions Regarding The Contract**

In any event, apart from the Court's analysis of the relevant Rule 19(b) factors and interests, these circumstances seem to present one of the easier scenarios for analysis under Rule 19(b). As one court has phrased it, "a contracting party is the paradigm of an indispensable party." Travelers Indemnity Co. v. Household Int'l, Inc., 775 F. Supp. 518, 527 (D. Conn. 1991) (noting that it "failed to find any case on similar facts that has held that a party to a contract is not an indispensable party"). Accord United States v. Creative Games Tech., Inc., 27 F.3d 572 (table), 1994 WL 320296 (8th Cir. 1994) (unpublished) ("It is simply inconceivable to us that a suit claiming that a contract is invalid should be allowed to proceed in the absence of all parties

---

And because the damages suffered in Gwartz by the physician and his corporation were separate, the defendant would not be exposed to "incurring double, multiple, or otherwise inconsistent obligations." Id. at 1430. The issue here, however, is not whether a judgment against Paulson in the absence of Asset Opportunities would expose Asset Opportunities to inconsistent obligations.

to the contract."). In an action regarding the validity of a telecommunications lease between the government and a telecommunications provider, the court summarily found that "[u]nquestionably the whole existence of [the contracting provider] is dependent upon the validity of the contract and yet [it] has not been joined as a party" and could not be made a party. RCA Global Communications, Inc. v. United States Dept. of Interior, 432 F. Supp. 791, 795 (D. Guam 1977) (dismissing action for lack of process under Rule 4(d)).[10]

"No procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable." Lomayaktewa v. Hathaway, 520 F.2d 1324, 1325 (9th Cir 1975) (affirming dismissal of action to void lease of Indian land where court could not join Indian tribe that was joint owner but entitled to sovereign immunity). Similarly, in Cloverleaf Standardbred Owners Assoc. v. Nat'l Bank of Washington, the D.C. Circuit affirmed the dismissal of an action by a contract creditor against the debtor's bank–which had offset the funds in the debtor's account after the debtor defaulted on loans from the bank, including funds that the creditor alleged debtor owed it–where the debtor could not be joined without destroying diversity jurisdiction. 699 F.2d 1274, 1275 (D.C. Cir. 1983). Although the creditor initially brought suit

---

[10] These basic principles are also consistent with practice under Rule 19 prior to its 1966 amendment. Ward v. Deavers, 203 F.2d 72, 75 (D.C. Cir. 1953) ("'There is a general rule that where rights sued upon arise from a contract all parties to it must be joined.'"). "Generally all parties to an instrument sought to be cancelled are indispensable parties to a suit for cancellation unless it is obvious that the one joined has no interest whatever in the subject matter of the suit." Kleinschmidt v. Kleinschmidt Labs., Inc., 89 F. Supp. 869, 871 (N.D. Ill. 1950) (concluding that defendant who was a party to the contract that plaintiff sought to have rescinded and cancelled was an indispensable party); Spanner v. Brandt, 1 F.R.D. 555, 557 (S.D.N.Y. 1941) ("Actions seeking cancellation of contracts cannot be permitted unless all the parties to be affected by a decree shall be before the court."). Regarding the 1966 amendments to Rule 19, the Supreme Court has observed that "[t]he new text of the Rule was not intended as a change in principles." Provident Tradesmen Bank & Trust Co. v. Patterson, 390 U.S. 102, 118 (1968).

against both the debtor and the bank, it voluntarily dismissed the debtor in order to preserve diversity. The bank then moved to dismiss under Rule 19, contending that the debtor must be included in the action. The D.C. Circuit upheld the dismissal on the grounds that the "very agreement at issue is between [debtor] and [creditor]." Id. at 1276.

The interest of Asset Opportunities as the assignee of the policy in the adjudication of this action to rescind the policy thus seems undeniable. As one court concluded, this body of "precedent alone" compels the conclusion that a party to an insurance contract is an indispensable party to an action on the policy. Travelers Indemnity Co., 775 F. Supp. at 528.

Plaintiff relies largely on Helzberg's Diamond Shops, Inc. v. Valley West Des Moines Shopping Center, 564 F.2d 816 (8th Cir. 1977), claiming that "the Eighth Circuit takes a narrower approach" than the general rule that a party to a contract is indispensable to an action on that contract. (Mem. at 13.) In Helzberg's, a shopping center granted a jewelry retailer a lease "to operate a full line jewelry store" at the center. Id. at 817. The lease also provided that the center would not permit "more than two full line jewelry stores" in addition to the leased premises. Id. After the center leased two additional spaces for full line jewelry stores, it then entered into another lease with an entity that intended to open and operate a full line jewelry store. Id.

The retailer then filed suit for injunctive relief against the shopping center. The shopping center moved to dismiss under Rule 19 for failure to join the entity to which the center had granted the third additional lease. Although the district court denied that motion, it granted preliminary injunctive relief prohibiting the shopping center from leasing to "a fourth full line jewelry store" pending a determination of the action on the merits. Id. at 817-18.

On review, the Eighth Circuit ruled that the prospective fourth jewelry tenant was not an indispensable party. The court explained that the granting of preliminary injunctive relief did

16

not prejudice that fourth tenant because none of that tenant's rights or obligations would be ultimately determined in the suit to which it is not a party. Id. at 819. The court noted that while it was "true that the obligations of [the shopping center] to [the jewelry retailer], as determined in these proceedings, may be inconsistent with [the shopping center's] obligations to [the fourth tenant]," "any inconsistency in those obligations will result from [the shopping center's] voluntary execution of two Lease Agreements which impose inconsistent obligations rather than from [the fourth tenant's] absence from the present proceedings." Id.

The court further explained that because the retailer sought only to restrain the shopping center's breach of its lease agreement to which those two entities were the sole parties, "all of the rights and obligations arising under a lease can be adjudicated where all of the parties to the lease are before the court." Id. "In sum, it is generally recognized that a person does not become indispensable to an action to determine rights under a contract simply because that person's rights or obligations under an entirely separate contract will be affected by the result of the action." Id. at 820.[11]

In effect, the Eighth Circuit refused to dismiss an action against a party that had allegedly violated its contract with the plaintiff simply because the entity with which that party had entered another contract was not subject to the personal jurisdiction of the district court even though the contract with the plaintiff was breached by the defendant having entered the similar contract with the entity that was not a party to the action.

Here, however, Plaintiffs do not allege Paulson engaged in any wrongdoing by entering a contract with Asset Opportunities. Rather, Plaintiffs essentially allege that Mr. Paulson provided

---

[11] In addition, the court noted that the fourth tenant had been afforded an opportunity to intervene, but that it declined to do so. Id.

false or misleading information in applying for the insurance policies.  Moreover, Asset Opportunities is a defendant–added as such only in the Second Amended Complaint–simply because it is the present owner of the policy originally issued to Mr. Paulson.  Thus there is no second contract that creates any inconsistent obligations with the insurance contract at issue in this action.

Plaintiffs contend that "AXA and Paulson's original agreement as memorialized in the 786 policy is entirely separate and distinct both from any agreement by which A&M obtained the 786 policy from Paulson, and from the purchase agreement by which [Asset Opportunities] subsequently acquired the 786 policy from A&M." (Mem. at 13.)  But the later contracts were not "entirely separate and distinct" from the underlying policy in that those contracts assigned the underlying policy.

In any event, Plaintiffs' characterization of the assignment contracts hardly leads to the conclusion they assert, that "all rights and obligations arising pursuant to AXA's issuance of that policy to Paulson can be adjudicated fully without [Asset Opportunities'] presence." (Id.)  The contracts here are linked in that the later contracts transferred ownership of the insurance policy to the party over whom this Court cannot exercise jurisdiction.  Moreover, unlike the party seeking dismissal in Helzberg's Diamond Shops, Asset Opportunities is not trying to avoid the consequences of any inconsistency it voluntarily created by seeking to dismiss this action for failure to join the party with whom it voluntarily created such an inconsistency.

## III.   CONCLUSION

This Court lacks personal jurisdiction over Asset Opportunities.  Because Asset Opportunities is the present owner of the policy at issue, the Court can not proceed to adjudicate the claims seeking rescission of the policy and a declaration that it is void, thereby rendering

Asset Opportunities an indispensable party. Accordingly, the action should be dismissed, but without prejudice. <u>Cloverleaf Standardbred Owners Assoc. v. Nat'l Bank of Washington</u>, 699 F.2d 1274, 1275 n.2 (D.C. Cir. 1983) (explaining that Rule 19 dismissal is without prejudice).

## IV. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, IT IS HEREBY RECOMMENDED that:

1. Defendant's motion to dismiss (Doc. No. 42) be GRANTED; and

2. The action be DISMISSED WITHOUT PREJUDICE to it being filed in a forum where the court possesses jurisdiction over all the parties.

Dated: September 4, 2007

   s/ Susan Richard Nelson

SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by September 19, 2007, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.